UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD McAFEE,

    Plaintiff,

v.                                                                          Case No. 1:16-cv-1417
                                                                        Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,

_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB).

Plaintiff alleged a disability onset date of January 1, 2007. PageID.244. Because plaintiff last met the insured status requirements of the Social Security Act on March 31, 2012, the relevant time period for this appeal is January 1, 2007 through March 31, 2012. PageID.744, 748. Plaintiff identified his disabling conditions as: carpal tunnel; pain in the back, knees, shoulders and arms; hearing aids in both ears; and sleep apnea. PageID.256. Prior to applying for DIB, plaintiff completed the 12th grade and had past employment as a core maker in a factory. PageID.257.

Plaintiff's claim was previously before this Court in *McAfee v. Commissioner*, No. 1:14-cv-771 (W.D. Mich.) ("*McAfee I*"). In *McAfee I*, which involved a February 21, 2013 decision from Administrative Law Judge (ALJ) Bruce, the Court noted that "[a]s part of his

1

decision, the ALJ [Bruce] gave *res judicata* effect to a previous ALJ's decision [by ALJ Butler] denying benefits on June 17, 2010, which found that plaintiff was not disabled from the alleged onset date of January 1, 2007 through June 17, 2010." *McAfee I* at PageID.806. Ultimately, the Court reversed and remanded the case pursuant to sentence four of 42 U.S.C. § 405(g), because ALJ Bruce's decision did not address plaintiff's subjective complaints in a meaningful manner, i.e., the ALJ did not identify the symptoms mentioned in plaintiff's Adult Functional Report, address how those symptoms were disproportionate to the objective medical evidence, or how the symptoms were inconsistent with his activities of daily living. *Id*. at PageID.815. The Court further stated that "[o]n remand, the Commissioner is directed to re-evaluate plaintiff's credibility with respect to the pain in his shoulders, knees and hands." *Id*. at PageID.815-816.

In the present decision, entered on remand, ALJ Sampson recounted the history of the case:

> Pursuant to the District Court remand order, the Appeals Council has directed the undersigned to reevaluate the plaintiff's credibility with respect to the pain in his shoulders, knees, and hands (Exhibits B9A, B10A). The undersigned notes that there is evidence subsequent to the prior June 17, 2010 decision, which supports severe impairments of rheumatoid arthritis, osteoarthritis of the shoulders, and chondromalacia of the knees.
>
> The claimant had previously filed a Title II application for a period of disability and disability insurance benefits, which was denied at the hearing level by Administrative Law Judge Butler on June 17, 2010 (Exhibit B1A). There is no new and material evidence upon which to base any disturbance of that decision. As such, the principles of *res judicata* dictate that the decision of Administrative Law Judge Butler is final for the period from the claimant's alleged onset date of January 1, 2007 through the decision date of June 17, 2010.

PageID.742.

ALJ Sampson reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on August 17, 2016. PageID.742-753. This decision, which was later approved

by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

3

of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2007 and met the insured status requirements of the Social Security Act through March

31, 2012. PageID.744. At the second step, the ALJ found that through the date last insured, plaintiff had severe impairments of: rheumatoid arthritis; degenerative disc disease of the cervical and lumbar spine; osteoarthritis of the shoulders; chondromalacia of the knees; bilateral carpal tunnel syndrome with releases; and obesity. PageID.744. At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.746.

The ALJ decided at the fourth step that:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant could never climb ladders, ropes or scaffolds but could occasionally climb ramps and stairs; and occasionally balance, stoop, kneel, and crouch but never crawl. The claimant could never reach overhead; frequently reach in all other directions; and occasionally handle and finger bilaterally. The claimant had to avoid concentrated exposure to vibration; temperature extremes; and hazards, such as dangerous moving machinery and unprotected heights.

PageID.747. The ALJ included the following footnote to explain changes in the residual functional capacity (RFC) from ALJ Butler's 2010 decision:

> In determining the claimant's residual functional capacity, the undersigned took into consideration Acquiescence Ruling 98-4(6), which addresses *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997). More specifically, the undersigned examined the previous decision made by a different Administrative Law Judge (ALJ) and determined that the claimant's residual functional capacity is different from the one previously assessed. The prior ALJ found that the claimant could perform the full range of medium work with no additional restrictions (Exhibit B1A). Since the prior 2010 decision, the claimant has been diagnosed with rheumatoid arthritis (Exhibit B6F). The claimant also has manipulative limitations due to carpal tunnel and shoulder issues (Exhibits B3F, B5F).

PageID.748. The ALJ also found that through the date last insured, plaintiff was unable to perform any past relevant work. PageID.751.

5

At the fifth step, the ALJ determined that, through the date last insured, plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.752-753. Specifically, the ALJ found that plaintiff could perform the requirements of the light and unskilled occupation of counter clerk (63,000 jobs nationally), as well as the requirements of the sedentary and unskilled occupations of callout operator (44,300 jobs nationally), and a surveillance systems monitor (85,350 jobs nationally). PageID.752-753. Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, from January 1, 2007 (the alleged onset date) through March 31, 2012 (the date last insured). PageID.753.

### III. DISCUSSION

Plaintiff set forth one issue on appeal:

**The Commissioner's unfavorable determination should be reversed because his adjudicator's RFC assessment is not supported by substantial evidence and relevant legal standards. In this instance, the ALJ refused to consider any evidence which occurred after plaintiff's date last insured. This mistake rendered the ALJ's decision incomplete and resulted in a flawed and inarticulate credibility determination.**

Plaintiff contends that ALJ erred by expressly ending his analysis of plaintiff's claim on March 31, 2012, plaintiff's date last insured. Here, the ALJ stated:

> Before examining the objective medical evidence in the record, it is important to emphasize that this is an application for Title II benefits only. Thus, the period at issue is through her [sic] date last insured of March 31, 2012. Therefore, the claimant must prove disability on or before her [sic] date last insured. For purposes of this decision, evidence prior to March 31, 2012 is considered to be probative.

PageID.748.

The ALJ did not err by requiring plaintiff to establish disability with evidence of his condition prior to his date last insured of March 31, 2012. "[I]nsured status is a requirement

6

for an award of disability insurance benefits." *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir.1984). Since plaintiff's insured status for purposes of receiving DIB expired on March 31, 2012, he cannot be found disabled unless he can establish that a disability existed on or before that date. *Id.* *See, e.g., Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1232-33 (6th Cir. 1993) ("it is plaintiff's burden to show by clear and convincing evidence that she was disabled during the relevant four-month period, September 6 to December 31, 1986 . . . . The only relevant items regarding the four-month period in question show no marked departure from previous examinations. The rest of the material contained in the additional evidence pertains to a time outside the scope of our inquiry."). Evidence of a claimant's medical condition after the last insured date is only considered to the extent it illuminates that condition before the expiration of the claimant's insured status. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988). "Evidence relating to a later time period is only minimally probative." *Jones v. Commissioner of Social Security*, No. 96–2173, 1997 WL 413641 at *1 (6th Cir. July 17, 1997), citing *Siterlet v. Secretary of Health & Human Services*, 823 F.2d 918, 920 (6th Cir. 1987) (where doctor examined the claimant approximately eight months after the claimant's insured status expired, the doctor's report was only "minimally probative" of the claimant's condition for purposes of a DIB claim).

Here, plaintiff contends that his records from 2012 through 2014, as well as his 2016 testimony regarding his current condition, are relevant to establishing his condition as it existed on his date last insured of March 31, 2012. The Court disagrees with this contention, which, if accepted, would render the date last insured meaningless. As discussed, *supra*, evidence of a claimant's medical condition after the date last insured is only "minimally probative." At the hearing held on August 3, 2016, plaintiff testified that his left hand was swollen and that he "can't hardly lift with it." PageID.794. Back on March 29, 2012 (two days before plaintiff's date last

7

insured), plaintiff's surgeon (Dr. Berry) noted that plaintiff had progressed slowly following the carpal tunnel release of his left hand. PageID.619. However, the doctor also stated that the hand "can be used safely for basically all activities, including medium to heavy work." PageID.619. Plaintiff identifies one record of his condition from June 21, 2012 (about three months after the date last insured), in which the doctor noted that "[a]t this point, the patient is no longer improving after carpal tunnel release" and that "[t]he patient will have some permanent restriction on use of his hand due to pain." PageID.696-697. This evidence is not probative of an adverse change in plaintiff's condition from March 29, 2012 to his last insured date of March 31, 2012; the record states that plaintiff "is no longer improving."

Plaintiff also contests the ALJ's evaluation of his shoulder. The ALJ noted that plaintiff underwent surgery on his left shoulder in September 2011, had improvement including forward elevation to 80 degrees, and did not undergo another surgery until after the date last insured. PageID.750. Plaintiff does not address this issue in any detail, other than stating that "The ALJ's analysis of these two complaints is wrong, as noted by the post-DLI surgeries and diagnoses (e.g., left shoulder sub-optimal rehabilitation, (PageID.998-1000))." Plaintiff's Brief at PageID.1265. The cited record, from April 16, 2014 (about two years after plaintiff's date last insured) states "I feel his left shoulder will just require more therapy." PageID.1000.

In summary, plaintiff has not met his burden to demonstrate that medical records generated after the date last insured were even minimally probative of his condition as it existed on March 31, 2012. Accordingly, this claim of error is denied.[1]

---

[1] Plaintiff's contentions that the ALJ erred by failing to complete the credibility analysis on remand, failing to properly address plaintiff's credibility, and failing to address plaintiff's claim regarding walking were not identified in the statement of errors and deemed waived. *See* Notice (ECF No. 9, PageID.1241) ("The initial brief shall not exceed 20 pages and must contain a Statement of Errors, setting forth in a separately numbered section, each specific error of fact or law upon which Plaintiff seeks reversal or remand. Failure to identify an issue in the Statement of Errors constitutes a waiver of that issue."). In *McAfee I*, the Court reminded plaintiff's counsel of the briefing requirements. *See McAfee I* (Opinion) (ECF No. 16, PageID.810).

## IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: March 28, 2018 /s/ Ray Kent
United States Magistrate Judge